# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MICHAEL JOHN, ANN JOHN,** <br> **DAN GONZALES, and ROBERT** <br> **MARTINEZ,** | ‖ ‖ ‖ ‖ | |
| **Plaintiffs,** | ‖ ‖ ‖ | **CIVIL NO.  SA-07-CA-380-FB** |
| **v.** | ‖ ‖ | |
| **THE CITY OF SAN ANTONIO,** <br> **HENRY BASSUK, THOMAS** <br> **HILTPOLD, DARLENE MCCOY,** <br> **RICHARD MILLER, and** <br> **CHRIS PREUSS,** | ‖ ‖ ‖ ‖ ‖ ‖ | |
| **Defendants.** | ‖ | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    Honorable Fred Biery**
         **United States District Judge**

Pursuant to the Order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

### I.  JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1367.

### II.  PROCEDURAL HISTORY

This case was initiated on May 1, 2007, when plaintiffs, Michael John ("Mr. John"), Ann

---

[1] Docket no. 8.

John ("Ms. John"), and Dan Gonzales ("Mr. Gonzales")(collectively "plaintiffs") filed their separate motions to proceed in forma pauperis.[2]  The original complaint was filed on May 3, 2007, naming as defendants the City of San Antonio (the "City") and San Antonio Park Police Officers Henry Bassuk ("Officer Bassuk"), Thomas Hiltpold ("Officer Hiltpold"), Darlene McCoy ("Officer McCoy"), Richard Miller ("Officer Miller"), and Chris Preuss ("Officer Preuss") (collectively "defendants").[3]

On May 3, 2007, plaintiffs filed a motion for preliminary injunction with brief in support.[4]  On May 4, 2007, the District Court referred the case to the undersigned for "pretrial proceedings, including any requests for injunctive relief.[5]  The City filed its answer on June 4, 2007.[6]  The same day, Officers Bassuk, Hiltpold, McCoy, Miller, and Preuss (collectively the "Officers") filed separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment pursuant to Rule 56[7] and their separate answers.[8]  On June 5, 2007, the City filed a response to plaintiffs' motion for preliminary

---

[2]  Docket nos. 1-3.

[3]  Docket no. 5.

[4]  Docket no. 6.

[5]  Docket no. 8.

[6]  Docket no. 15.

[7]  Docket nos. 16-20.

[8]  Docket nos. 21-25.

injunction[9] and a separate joint response was filed by the Officers.[10]  On July 14, 2007, plaintiff

filed separate responses to each motion to dismiss or, alternatively, for summary judgment.[11]

Also on June 14, plaintiffs filed a motion for leave to amend their complaint and tendered

a proposed amended complaint.[12]  On June 20, 2007, the Officers filed a collective reply in

support of their motions to dismiss or, alternatively, for summary judgment.[13]  On June 22, 2007,

the Officers filed a collective response to plaintiffs' motion for leave to amend, and plaintiffs

filed a reply in support of their motion for preliminary injunction.[14]  On June 25, 2007, plaintiffs

filed a reply in support of their motion for leave to filed a first amended complaint.[15]  On June 29,

2007, plaintiffs filed a sur-reply to the Officers' motions to dismiss, and on July 2, 2007, the

Officers filed a motion to strike the sur-reply.[16]  On July 5, 2007, the Officers filed a combined

motion for summary judgment pursuant to Local Rule CV-12, asserting qualified immunity.[17]

---

[9]  Docket no. 26.

[10]  Docket no. 27.

[11]  Docket nos. 28-32.

[12]  Docket no. 33 and proposed amended complaint.  The motion for leave to amend was addressed and <u>granted</u> in the July 24, 2007 report and recommendation.  Docket no. 44.

[13]  Docket no. 34.

[14]  Docket nos. 35 and 36.

[15]  Docket no. 37.

[16]  Docket nos. 38 and 39.  Plaintiffs captioned their pleading "Plaintiffs Reply to Defendants Bassuk, Miller, McCoy, Preuss, and Hiltpold's Collective Response to Plaintiffs' Responses to Defendants' Respective Motions to Dismiss."  The pleading is referred to as "sur-reply," its proper procedural caption.

[17]  Docket no. 40.  At this time, the Officers' motion for summary judgment is pending.

On July 6, 2007, plaintiffs filed a response to the Officers' motion for summary judgment, seeking, in part, thirty days to conduct discovery on the issue of qualified immunity.[18]

On July 24, 2007, the undersigned issued a report and recommendations on the Officers separate motions to dismiss or, alternatively, for summary judgment, plaintiffs' motion for leave to file an  amended complaint, and the Officers' motion to strike plaintiffs' sur-reply to the motions to dismiss.[19]  The undersigned granted plaintiffs leave to file an amended complaint ("first amended complaint") and denied the Officers' motion to strike plaintiffs' sur-reply to the motions to dismiss.[20]  With respect to the Officers' motions to dismiss, the undersigned recommended:

(a)      Officer Bassuk's motion to dismiss[21] be **GRANTED** and each of plaintiffs' claims against him be **DISMISSED**;

(b)      Officer Hiltpold's motion to dismiss[22] be **GRANTED** and the claims against him: in his official capacity; under article I, § 8 of the Texas Constitution for damages; and under § 1983 in his individual capacity based on his alleged failure to investigate, or have the SAPD investigate Michael John's complaints of theft be **DISMISSED**;

(c)      Officer McCoy's motion to dismiss[23] be **GRANTED** and the claims against her in her official capacity and under article I, § 8 of the Texas Constitution for damages be **DISMISSED**;

---

[18]  Docket no. 41.

[19]  Docket no. 44.

[20]  Id. at 44-45.

[21]  Docket no. 16.

[22]  Docket no. 17.

[23]  Docket no. 18.

(d)     Officer McCoy's motion for summary judgment[24] be **GRANTED** and plaintiffs' § 1983 and state tort claims against her in her individual capacity based on allegations the Officer falsely accused Ms. John of having a warrant for her arrest be **DISMISSED**;

(e)     Officer Miller's motion to dismiss[25] be **GRANTED**, and all claims against the Officer: in his official capacity; under article I, § 8 of the Texas Constitution for damages; under §1983 in his individual capacity and under state law for tortious interference and slander based on the alleged March 2003 conduct; and under state law for tortious interference and slander based on the alleged June 2006 conduct be **DISMISSED**;

(f)     Officer Preuss' motion to dismiss be **GRANTED** and the claims against the Officer: in his official capacity; under article I, § 8 of the Texas Constitution for damages, and under § 1983 in his individual capacity for use of excessive force against Michael John in or about August 2006, based on the Eighth and Fourteenth Amendments be **DISMISSED**; and

(g)     any relief not expressly recommended to be granted, should be **DENIED**.[26]

The report also recommended plaintiffs' request in each of their responses to the Officers' motions to dismiss for an opportunity to further amend the complaint should be denied.[27]

In addition, the report explained that:

> In sum, if the District Court adopts this report, the claims remaining in the case include: all claims against the City; the § 1983 claim against Officers Hiltpold, McCoy, Miller, and Preuss in their individual capacities for undue burden on plaintiffs' exercise of free expression; the § 1983 claims against Officer Miller in his individual capacity that may be based on his alleged June 2006 conduct; the individual capacity claims against Officer Preuss under § 1983 for unlawful arrest as well as under state law for assault and false arrest; all claims against Officers Hiltpold, McCoy, Miller, and Preuss alleged generally against the Officers collectively in their individual capacities in paragraph 23 of the first amended

---

[24] Id.

[25] Docket no. 19.

[26] Docket no. 44 at 45-46.

[27] Id. at 45.

complaint; and claims for equitable relief under article I, § 8 of the Texas Constitution.[28]

On July 24, the undersigned also signed an Order denying the portion of plaintiffs' "reply" to the Officers' motion for summary judgment pursuant to Local Rule CV-12 that sought a thirty-day period of discovery[29] and entered a scheduling Order.[30]

Plaintiffs' first amended complaint, adds as plaintiff Robert Martinez ("Mr. Martinez"), clarifies paragraph 23 by adding references to Officers Hiltpold, McCoy, Miller, and Preuss, deletes a citation to § 73.001 of the Texas Civil Practice and Remedies Code from the slander claim, and appears to omit Officer Henry Bassuk as a defendant.[31]   The first amended complaint includes the following causes of action:

(1)        against the City:

• under 42 U.S.C. § 1983, for violating the First and Fourteenth Amendments by placing an undue burden on the exercise of free expression: through the passage of ordinance 98918 on or about March 4, 2004 and ordinances 2006-11-01-1256 and 2006-11-02-1157 on or about November 2, 2006; and through the actions of its employees who carried out an official municipal policy, practice, or custom;

• under § 1983, for violations of the First and Fourteenth Amendments by placing and undue burden on the exercise of free expression and denying plaintiffs due process with a permitting system that lacks clear, articulable standards and allows for broad discretionary licensing power;

• for subjecting Mr. Gonzales to disability discrimination in violation of 28 C.F.R. § 35.130(b)(3)(i), or the Americans with Disabilities Act ("ADA")

---

[28] Id. at 46-47.

[29] Docket no. 45.

[30] Docket no. 46.

[31] Docket no. 33 at first amended complaint.  See docket no. 44 at 3 n. 13.

of 1990, on or about December 6 and 9, 2006;[32]

- under § 1983, for violations of the Fourth and Fourteenth Amendments through an employee carrying out an official municipal policy, practice, or custom by knowingly and intentionally subjecting Mr. John, or causing him to be subjected, to unlawful arrests on or about November 29, 2003, October 2005, and August 2006;

- for violation of article I, § 8 of the Texas Constitution, by placing an undue burden on the exercise of free expression: through the passage of ordinance 98918 on or about March 4, 2004 and ordinances 2006-11-01-1256 and 2006-11-02-1157 on or about November 2, 2006; and through the actions of its employees who carried out an official municipal policy, practice, or custom;

- for violation of article I, § 8, by placing and undue burden on the exercise of free expression and denying plaintiffs due process with a permitting system that lacks clear, articulable standards and allows for broad discretionary licensing power;

- for tortious interference with plaintiffs' valid contracts through the actions of its employees carrying out an official municipal policy, practice, or custom;

- for tortious interference with plaintiff's prospective business relationships through the actions of its employees carrying out an official municipal policy, practice, or custom;

- for Mr. John's false imprisonment on or about November 29, 2003, October 2005, and August 2006 through an employee carrying out an official municipal policy, practice, or custom in violation of Texas Penal Code § 20.02 and the common law of Texas;

- for slander by publishing by oral communication or conduct, false and defamatory statements about plaintiffs through its employees carrying out an official municipal policy, practice, or custom in violation of Texas common law; and

- for maliciously initiating or procuring the criminal prosecutions of

---

[32] As 28 C.F.R. §§ 35.101, et seq, including § 35.130, were promulgated under the authority of 42 U.S.C. § 12134 of the Americans with Disabilities Act ("ADA") of 1990, Mr. Gonzales' claim is actually a claim under the ADA for disability discrimination.

plaintiffs without probable cause through its employees carrying out an official municipal policy, practice, or custom;

(2)    against Officer Bassuk in his official capacity:

- under § 1983, for violating the First and Fourteenth Amendments by placing an undue burden on the exercise of free expression;

- for subjecting Mr. Gonzales to disability discrimination in violation of 28 C.F.R. § 35.130(b)(3)(I) on or about December 6 and 9, 2006; and

- for violation of article I, § 8 of the Texas Constitution, by placing an undue burden on the exercise of free expression;

(3)    against Officer Hiltpold in his official and individual capacities:

- under §, 1983, for violating the First and Fourteenth Amendments by placing an undue burden on the exercise of free expression; and

- for violation of article I, § 8 of the Texas Constitution, by placing an undue burden on the exercise of free expression;

(4)    against Officer McCoy in her official and individual capacities:

- under§ 1983, for violating the First and Fourteenth Amendments by placing an undue burden on the exercise of free expression; and

- for violation of article I, § 8 of the Texas Constitution, by placing an undue burden on the exercise of free expression;

(5)    against Officer Miller in his official and individual capacities:

- under§ 1983, for violating the First and Fourteenth Amendments by placing an undue burden on the exercise of free expression;

- for violation of article I, § 8 of the Texas Constitution, by placing an undue burden on the exercise of free expression;

- for tortious interference with plaintiffs' valid contracts through the actions of its employees carrying out an official municipal policy, practice, or custom;

- for tortious interference with plaintiff's prospective business relationships

8

through the actions of its employees carrying out an official municipal policy, practice, or custom; and

- for slander by publishing by oral communication or conduct false and defamatory statements about plaintiffs through its employees carrying out an official municipal policy, practice, or custom in violation of Texas common law;

(6)     against Officer Preuss in his official and individual capacities:

- under§ 1983, for violating the First and Fourteenth Amendments by placing an undue burden on the exercise of free expression;

- under § 1983, for violations of the Fourth and Fourteenth Amendments by knowingly and intentionally subjecting Mr. John, or causing him to be subjected, to unlawful arrests on or August 2006;

- for violation of article I, § 8 of the Texas Constitution by placing an undue burden on the exercise of free expression;

- for Mr. John's false imprisonment on or about August 2006 in violation of Texas Penal Code § 20.02 and the common law of Texas; and

(7)     against Officer Preuss in his individual capacity:

- under § 1983, for subjecting Mr. John to excessive force on or about August 2006 in violation of the Eighth and Fourteenth Amendments;

- for assault, infliction of bodily injury, on Mr. John on or about August 2006 in violation of Texas Penal Code § 22.01(a)(1) and Texas common law; and

- for assault, offensive physical contact, on Mr. John on or about August 2006 in violation of Texas Penal Code § 22.01(a)(3).[33]

Plaintiffs are seeking an order:

- declaring §§16-236(b) and 35-679(e) of the San Antonio Code of Ordinances and Ordinance 98918 are in violation of the United States and Texas Constitutions;

---

[33]  Docket no. 33, first amended complaint at 8-12.

- permanently enjoining the City from enforcing §§16-236(b) and 35-679(e) and Ordinance 98918;

- permanently enjoining all defendants from placing an undue burden on free expression through official municipal policy, practice, or custom;

- declaring defendants violated the First and Fourteenth Amendments to the United States Constitution, and article I, § 8 of the Texas Constitution by placing an undue burden on the exercise of free expression;

- declaring the City unlawfully arrested and falsely imprisoned Mr. John in November 2003, October 2005, and August 2006;

- declaring defendant Chris Preuss assaulted and used excessive force against Mr. John in August 2006;

- declaring the City tortiously interfered with plaintiffs' existing contracts and prospective business relations on numerous occasions;

- Declaring the City slandered plaintiffs on numerous occasions; and

- declaring the City maliciously initiated or procured prosecutions against plaintiffs without probable cause on numerous occasions;[34] and

- awarding damages for medical costs and other actual damages, pain and suffering, emotional distress, punitive damages, court costs and other compensable costs, pre and post judgment interest; and all other relief at law and in equity to which they might be entitled.[35]

### III. ISSUE

Whether plaintiffs have satisfied their burden of proving entitlement to a preliminary injunction;

---

[34] <u>Id.</u> at 12-13.  More specifically, plaintiffs have identified their causes of action using letters from A to P and are also seeking an award damages as follows: individually from the City for causes of action A, C, D, E, F, M, and N; jointly and severally from the City for B, C, K, L, O, P, and Q; jointly and severally from Officers Hiltpold and McCoy for B; jointly and severally from Officer Miller for B, K, L, and P; individually from Officer Preuss for H, I, and J; and jointly and severally from Officer Preuss for B, G, and O.

[35] <u>Id.</u>

## IV.  PRELIMINARY INJUNCTION STANDARDS

In this Circuit, the test for entitlement to a preliminary injunction has four parts.  A preliminary injunction may be granted <u>only</u> if the moving party establishes each of the following four factors:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury out-weighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest.[36]  A preliminary injunction is an extraordinary remedy and the decision to grant a preliminary injunction is to be treated as the exception rather than the rule.[37]

An evidentiary hearing is not always required before a court rules on a preliminary injunction.  If factual matters are not in dispute, no oral hearing is required and the parties need only be given "ample opportunity to present their views of the legal issues involved."[38]  On the other hand, "when factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted."[39]  The basic question on the need for a hearing is whether it will add

---

[36] <u>See e.g.</u>, <u>Hoover v. Morales</u>, 146 F.3d 304, 307 (5th Cir. 1998); <u>Wenner v. Texas Lottery Comm'n</u>, 123 F.3d 321, 325 (5th Cir. 1997), <u>cert. denied</u>, 118 S.Ct. 1514 (1998); <u>Cherokee Pump & Equip. Inc. v. Aurora Pump</u>, 38 F.3d 246, 249 (5th Cir. 1994).

[37] <u>Valley v. Rapides Parish Sch. Bd.</u>, 118 F.3d 1047, 1050 (5th Cir. 1997).

[38] <u>Kaepa v. Achilles</u>, 76 F.3d 624, 628 (5th Cir.), <u>cert. denied</u>, 117 S.Ct. 77 (1996).  <u>See</u> <u>Miller Brewing Co. v. Ft. Worth Distrib. Co.</u>, 781 F.2d 494, 496 (5th Cir. 1986); <u>Commerce Park at DFW Freeport v. Mardian Construction Co.</u>, 729 F.2d 334, 341 (5th Cir. 1984).  <u>See also</u> <u>Campbell Soup Co. v. Giles</u>, 47 F.3d 467, 470 (1st Cir. 1995); <u>Stanley v. University of Southern Cal.</u>, 13 F.3d 1313, 1326 (9th Cir. 1994) (no abuse of discretion to deny party right to call witnesses).

[39] <u>Kaepa</u>, 76 F.3d at 628; <u>Commerce Park at DFW Freeport</u>, 729 F.2d at 341.

anything material to the Court's consideration of the case.[40]  Evidence at a hearing on a

preliminary injunction need not be "testimonial" and affidavits can be considered by the Court.

A district court has broad discretion when ruling on requests for preliminary injunctions.

When, as here, the requested preliminary relief would award movants substantially the relief they

might obtain after a trial on the merits, the Court must be particularly deliberate when weighing

the four prerequisites for injunctive relief.[41]

### V.  DISCUSSION: FINDINGS OF FACT and CONCLUSIONS OF LAW

A.    **Summary of the Allegations**

Plaintiffs have moved for:

preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure
prohibiting Defendants (I) from enforcing §§ 16-236(b) and 35-679(e)[42] of the
Code of Ordinances of the City of San Antonio and Ordinance 98918 of the City
of San Antonio, [collectively the "ordinances"] and (ii) from using excessive
force, making unlawful arrests, falsely imprisoning, tortiously interfering with
existing or prospective relations, assaulting, or slandering Plaintiffs.[43]

Plaintiffs assert their motion is based on their claim under the First Amendment for violations of

their right to exercise free speech[44] and allege with respect to the ordinances that:

• 	under the ordinances; the permitting rules are "extremely demanding and

---

[40] Cf., Parker v. Ryan, 959 F.2d 579, 584 (5th Cir. 1992); Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc., 658 F. Supp. 351, 354 n.2 (N.D. Tex. 1986).

[41] E.g., Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co., 997 F. 2d 484, 485-86 (8th Cir. 1993) (citations omitted).

[42] Section 35-679(e) is actually part of the City's Unified Development Code ("UDC").

[43] Docket no. 6 at 1.

[44] Id. at 7.

highly restrictive; only a small number of permits are granted; permits are granted at the discretion of City employees; the application fee is $750; "burdensome local, state, and federal background checks" are required; annual renewal is by lottery system; and a letter of insurability as well as a "list and pictures of all products to be vended are required;"

- the ordinances include "significant criminal penalties for violations," but vague and broad language make it "essentially impossible for a permit-holder to have any degree of confidence" of complying with the law;

- the ordinances require the vendor to provide "'manufacturing information' about all products" but do not specify what information is sought;

- by requiring the vending have "no effect on adjacent Public Property," presumably, a vendor could lose the permit if a purchaser steps on to public property to look at the goods purchased;

- as defined, "vending" includes a broad range of First Amendment speech, including "'offering goods . . . in exchange for compensation' and the 'distribution or display of . . . commercial advertising matter;'"

- the ordinances "ban the distribution, display, demonstration, presentation, solicitation, and exhibition of goods" as well as "make it unlawful to 'peddle, canvass, or solicit' on public property in the District;"

- mobile vending is completely banned;

- vending on public property or on private property "'within view from public property'" is completely banned;

- vending is allowed "in a particular stationary location, usually remote from pedestrian traffic;"

- vending must be "'merely an ancillary use to . . . the main business of the property" where it occurs–for example, a hotel could sell souvenirs from a spot but a private vendor could not;

- the ordinances ban the display of goods in the District, define "display" as "'any manner in which any person . . . makes visible,'" and do not define "goods"–raising the question of whether it is "illegal for any person to visibly hold any personal property within the [District];

- the ordinances provide no exceptions for "goods or services of a political,

social, or religious nature" and the distribution of such material or "solicitation of charitable donations, among other core First Amendment activities are all prohibited; and

• the ban does not bar vending within the interior of any permanent structure or the sale of merchandise from private property as long as the property owner has granted permission.[45]

Plaintiffs also allege the ordinances allow for "arbitrary punishment of innocuous activity," such as displaying goods in an inoffensive manner.[46]  Plaintiffs further allege that between March 2003 and the present, the City "has engaged in an extralegal campaign to prevent Plaintiffs from lawfully selling merchandise on private or enclosed property along the Riverwalk."[47]  Plaintiffs contend the City used its ordinances to punish Mr. John's political

---

[45] Docket no. 6 at 2-4.

[46] Id. at 4.  Specifically, Dan Gonzales, "who is confined to a wheel chair," is unable to cover the flowers he sells in bars with the owner's permission, "without blocking his field of vision."  Id. Mr. Gonzales was ticketed for holding the flowers in his lap while waiting for a bus or ride on or about December 6 and 9, 2006.  Id.

[47] Id.  Alleged conduct includes:
• falsely telling the manager of Mad Dogs, a privately-owned pub and restaurant where Michael and Ann John had permission to sell, in approximately March 2003, that Ms. John was breaking the law and loudly threatening to arrest her, causing Mad Dogs to rescind the permission;
• ticketing Ms. John on or about October 4, 2003, for selling merchandise on the Riverwalk–a ticket that was dismissed eight months later;
• ticketing Michael John on or about November 11, 2005, for selling goods when he was actually walking with his son to a concert;
• arresting Mr. John on or about November 29, 2003, for selling goods at the Presidium, a privately-owned hotel where he had permission to sell;
• ticketing Mr. John on or about September 26, 2004, for selling novelty items at the Hilton Hotel, a private business where he had permission to sell;
• ticketing Ann John on or about July 14, 2004, for selling goods on the property of the Chocolate Factory, a private business where she had permission to sell;
• threatening to arrest Ms. John in approximately June 2006 for selling on Landry's property, a private business where she had permission to sell;

speech.[48]  Plaintiffs assert the City "unlawfully denied police protection and services to Plaintiffs

in order to drive them away from the Riverwalk."[49]  Finally, plaintiffs allege the City, "through

its agents, instructed or encouraged business owners" to deny or rescind, permission for plaintiffs

to sell goods on private property.[50]

## B.     Need For A Hearing

The Court has considered plaintiffs' allegations and arguments, as set forth in their first

amended complaint, application for preliminary injunction, and reply, as well as the responsive

pleadings of the City and the Officers.  The Court has also considered the copy of § 16-236 of the

Code of Ordinances attached to the City's response.[51]  The Court has further considered that

---------------

•     falsely accusing Ms. John in approximately August 2004 of having a warrant
      out for her arrest to prevent her from selling on the Riverwalk;
•     falsely telling plaintiffs they could not sell on the Riverwalk after 11:00 p.m.
      when no law barred such behavior;
•     arresting Michael John in approximately October 2005 for trespassing,
      resulting in ninety minutes in jail; and
•     instructing Mr. John on or about March 11, 2006, to go to an area not open to
      the public and then arresting him.

Id. at 4-6.

[48] Id. at 6.  On or about March 29, 2006, Michael John was ticketed for carrying a sign with the information "stopparkpoliceabuse.com."  Id.  In approximately August 2006, Officer Preuss and other agents of the City arrested Michael John while he "was speaking to an employee of County Line Barbecue on public property about an upcoming City Council meeting."  Id.

[49] Id. at 7.

[50] Id.

[51] As stated above, plaintiffs seek to enjoin the enforcement of § 16-236 of the San Antonio Code of Ordinances ("Code of Ordinances"), § 35-679(e) of the UDC, and "Ordinance 98918 of the City of San Antonio."  Plaintiffs have not filed copies of these ordinances.  The City has proffered a copy of § 16-236, discusses both § 16-236 and § 35-679, and asserts the "two City Code provisions cited by Plaintiffs are very similar."  Other than mentioning Ordinance 98918 once at page one of its response to the application for preliminary injunction, the City does not further address the

plaintiffs neither requested a hearing on their application or indicated that a hearing may be necessary.

As the factual basis for the application for preliminary injunction, plaintiffs merely re-alleged the allegations set forth in paragraphs 11-34 of their first amended complaint.  Plaintiffs have proffered no evidence in support of their application, particularly affidavits of testimony, exhibits, or copies of the challenged ordinances.[52]  Defendants' responses to the application do not dispute plaintiffs' factual allegations or set forth disputed facts, and, other than a copy of § 16-236, defendants have submitted no evidentiary or documentary support for their position any have proffered no evidence to identify disputed factual matters.

Therefore, for the purpose of plaintiffs' application for preliminary relief, and to the extent relevant to the assessment of whether plaintiffs have demonstrated the ordinances likely violate the First Amendment, the Court assumes plaintiffs' factual allegations asserted in their motion, and paragraphs 11-34 of first amended complaint, are true.  As plaintiffs have not identified any factual matters in dispute, other than those facts asserted which will be taken as

---

Ordinance.  Through the City's official website at www.sanantonio.gov, the Court determined access to § 16-236 of the Code of Ordinances and § 35-679(e) of the UDC was available from the Online Library at www.municode.com.  The "Table of Sections Affected" in the UDC indicates § 35-679(e) was amended by Ordinance 98918 on March 4, 2004.  No other reference to Ordinance 98919 appears in either the Code of Ordinances or the UDC.

[52]  Plaintiffs did attach the affidavits of Michael and Ann John to their responses to the motions to dismiss of Officers Hiltpold, McCoy, Miller, and Preuss.  Docket nos. 29, 30, 31, 32. But, plaintiffs' application for preliminary injunction does not refer to these affidavits as support for the application.  In addition, the affidavits contain testimony about the alleged conduct of the Officers but do not provide information about the ordinances at issue, plaintiffs' attempts to comply with the ordinances, or any other information relevant to whether the ordinances may violate the First Amendment.

true for the purposes of this report,[53] and because the parties have amply briefed "their views of the legal issues involved,"[54] a hearing will not add anything material to the legal questions before the Court.[55]

## C.      The Challenged Ordinances

On or about March 4, 2004, the City passed Ordinance 98919 "bann[ing] the sale or solicitation of goods, property or services on public property in the Downtown Business District ("District"), which includes the Riverwalk and the street-level area above the Riverwalk," unless permitted by the Paseo del Rio Association ("Association").[56]  On November 2, 2006, the City changed this arrangement by passing Ordinance No. 2006-11-02-1257, amending § 16-236(b) , of the City's Code of Ordinances, and Ordinance No. 2006-11-01-1256, amending § 35-679(e), requiring the City to grant the permits rather than the Association.[57]

Section 16-236 provides in relevant part:

Sec. 16-236. Areas prohibited to peddlers and canvassers; affirmative defense.

---

[53] As noted, plaintiffs' first amended complaint was ordered to be filed on July 24, 2007, and, accordingly, defendants' time for filing answers to that amended pleading have not expired. Thus, it is also assumed for purposes of this report that defendants will deny all material, substantive facts alleged in the noted paragraphs of plaintiffs' first amended complaint.

[54] Kaepa, 76 F.3d at 628.

[55] Cf., Parker, 959 F.2d at 584; Worlds of Wonder, 658 F. Supp. at 354 n.2.

[56] Docket no. 6 at 2; docket no. 33, proposed first amended complaint at 3.  As noted above, the "Table of Sections Affected" in the UDC indicates § 35-679(e) was amended by Ordinance 98918 on March 4, 2004.

[57] Id.; see SAN ANTONIO, TEX., CODE OF ORDINANCES, ch. 16, art. IX, § 16.236 (Code adopted Feb. 20, 1986) and San Antonio, Tex., Unified Dev. Code, art. VI, div. 6, § 35-679(e) (Jan. 1, 2006), both available at www.municode.com.

* * *

(b)    *Downtown business district*

(1)  *Definitions*.

*Display* means any manner in which any person shows, exhibits, demonstrates, presents, or otherwise makes visible goods, merchandise, or service.

*Downtown business district* has the same meaning as in the Unified Development Code of San Antonio Texas.

*Hawk* means offering goods, merchandise, or services by calling or crying out.

*Inhibit* means to cause any person walking or otherwise proceeding to swerve, dodge, change direction, or come to a complete stop to avoid a display, transaction or person involved in vending.

*Public property* means any real property owned or controlled by the city.

*Vend* means offering goods, merchandise, or services in exchange for compensation; accepting compensation in exchange for goods, merchandise, or services; or distribution or display of merchandise or commercial advertising matter.

(2)  *Vending in the downtown business district prohibited.*

a.  It shall be unlawful for any person to peddle, canvass, or solicit or cause or permit to be peddled, canvassed or solicited, any property or services or to hawk, sell, or vend goods, merchandise, or services in the downtown business district on public property, provided that any vending that inhibits pedestrian or traffic flow on adjacent property is prohibited notwithstanding any lease provision or the possession of a validly issued permit.

b.  It shall be unlawful to display or transport merchandise or goods within the downtown business district, outside of areas permitted under subsection (3)c. unless the

18

merchandise or goods are enclosed, covered or not visible during transport.

(3) *Exceptions*.  The prohibition against vending does not apply to the following:

a.  Vending, on public property leased to a private individual or business, of food and/or beverage services provided that such vending complies with all other laws and the food and/or beverage service does not inhibit pedestrian or traffic flow on adjacent public property and is offered and exchanged solely within stationary eating establishments to patrons seated outside the structure of the building; all other vending offered in such leased areas shall require a permit issued under subsection (3)c.;

b.  Vending of goods, merchandise, or services offered and exchanged solely within the interior of any permanent structure;

c.  Vending goods, merchandise, or services as allowed by any permit from the city which expressly allows operations in the downtown business district;

d.  Wearing nametags, badges, shirts, aprons or other personal clothing attire with company information, logos or other identifying items; or

e.  Vending officially sanctioned by the city as part of a special event sponsored or co-sponsored by the city.

(4) *Permits*.  Downtown business district vending permits shall be issued annually by the designated city department in accordance with procedures adopted by the city manager or the city manager's designee and such policies shall include, but not be limited to, standards for the amount of space necessary for the issuance of a permit.  The city manager or the city manager's designee shall have authority to issue permits solely for real property owned by the city and leased to a private individual or business and such vending shall be merely an ancillary use to and shall be compatible with the main business of the property in which the vending is taking place. The city manager or the city manager's designee shall evaluate each proposed vending location and shall only be authorized to

19

issue permits for those locations which the city manager or the city manager's designee has determined are large enough that vending in those locations would have no effect on adjacent public property. . . . The director of downtown operations shall have authority to immediately suspend, subject to an appeal process to the city manager or the city manager's designee, any such permits in the event that the permitee does not comply with the policies and procedures adopted by city manager or is in violation of this chapter.

(5) *Fees*.

a.  A vending permit fee of seven hundred and fifty dollars ($750.00) shall be paid to the city with the submission of each application for a vending permit for one location to pay for the cost of review and verification of accuracy of the application and conformance with the other requirements of this Code. An additional vending permit fee of one hundred dollars ($100.00) shall be paid for each additional location.

\* \* \*

(6) *Penalties*.  A person who intentionally, knowingly or recklessly violates any provision of this subsection (b) is guilty of a class C misdemeanor and shall upon conviction be subject to a fine as follows:

a.  A person convicted of a violation of this subsection (b) shall be fined a minimum amount of not less than two hundred dollars ($200.00) per violation and a maximum amount of not more than two thousand dollars ($2,000.00) per violation.

b.  A person convicted of a second or any subsequent violation shall be fined not less than five hundred dollars ($500.00) and not more than two thousand dollars ($2,000.00).

c.  Each violation of this subsection (b) shall constitute a separate offense, and each day an offense continues shall be considered a new violation for purposes of enforcing this subsection (b). Violations shall include convictions and

offenses in which deferred adjudication was granted.[58]

Section 35-679(e) provides in relevant part:

* * *

(e)    *Vending in the Riverwalk Area.*

(1)  *Definitions.*  The following definitions apply to this subsection 35-679(e) in addition to those definitions contained in Appendix "A":

*Display* means any manner in which the property owner, property operator or employee thereof shows, exhibits, demonstrates, presents, or otherwise makes visible goods, merchandise, or service.

*Hawk* means offering goods, merchandise, or services by calling or crying out.

*Inhibit* means to cause any person walking along the Riverwalk area right of way (sidewalk/pathway) to swerve, dodge, change direction, or come to a complete stop to avoid a display, transaction or person involved in vending.

*Riverwalk area* means the area defined in Appendix "A" and includes the area on or adjacent to any appurtenance along the public right of way along the Riverwalk area below street level such as public seating, common areas, open space, balustrades, stairwells, buffer zones, dividing walls, landscaping, planters, and/or vegetation and any structure attached to or outside the walls of an enclosed building on any side of any Riverwalk area premises, including balconies and stairwells, along or adjacent to the Riverwalk area.

*Vend* means offering goods, merchandise, or services in exchange for compensation; accepting compensation in exchange for goods, merchandise, or services; or distribution or display of merchandise or commercial advertising matter.

---

[58]  SAN ANTONIO, TEX., CODE OF ORDINANCES, ch. 16, art. IX, § 16.236 (Code adopted Feb. 20, 1986), available at www.municode.com.

(2)  *Vending Prohibited in Riverwalk Area.*

(a)  It shall be unlawful to hawk, sell, or vend goods, merchandise, or services in the Riverwalk Area on public property, or on the public right-of-way, or on public property between the river and public right-of-way, or in the Riverwalk Area on private property that is within view from public property in the Riverwalk Area regardless of who initiates the contact or purchase, provided that any vending that inhibits pedestrian flow on the Riverwalk Area right-of-way (sidewalk/pathway) is prohibited notwithstanding any lease provision or the possession of a validly issued permit.

(b)  It shall be unlawful to hawk, sell, or vend goods, merchandise, or services in the Riverwalk area on public property or on the public right-of-way or in the Riverwalk area on private property that is within view from public property in the Riverwalk area notwithstanding the provisions of any other chapter of the City Code of San Antonio, Texas.

(c)   It shall be unlawful to display and/or transport merchandise or goods within the Riverwalk area right-of-way (sidewalk/pathway) unless the merchandise or goods are enclosed, covered or otherwise not visible during transport.

(3)  *Exceptions*.  The prohibition against vending does not apply to the following:

(a)  Vending of food and/or beverage services provided that such vending complies with all other laws and the food and/or beverage service, does not inhibit pedestrian flow on the Riverwalk area right-of-way (sidewalk/pathway), and is offered and exchanged solely within stationary eating establishments to patrons seated outside the structure of the building; all other Vending offered in such establishments shall require a permit issued under subsection (d) below; or

(b)  Vending of goods, merchandise, or services offered and exchanged solely within the interior of any permanent structure; or

(c)  Vending of goods, merchandise, or services offered and exchanged by the river barge operator under the Downtown San Antonio River Barge Concession Contract; or

22

(d)  Vending of goods, merchandise, or services as allowed by permit from the City of San Antonio.  The vending shall be an ancillary use to and compatible with the main business of the property in which the vending is taking place; or

(e)  Displaying signs or boards approved under section 35-678 of this chapter; or

(f)  Wearing nametags, badges, shirts, aprons or other personal clothing attire with company information, logos or other identifying items; or

(g)  Display of goods on a portable vending cart on real property owned by a private individual or business, or real property owned by a private individual or business approved in accordance with the provisions of subsection 35-679(b) of this chapter provided that any completed sales of such goods takes place in the interior of an enclosed building; or

(h)  Vending officially sanctioned by the City of San Antonio as part of a special event sponsored or co-sponsored by the City of San Antonio; or

(i)  Vending of goods, merchandise, or services as allowed by permit from the City of San Antonio.

(4)  *Permits.*

(a)  *Private Property Vending Permits*.  Private property vending permits shall be issued annually by the designated city department in accordance with procedures adopted by the city manager or the city manager's designee. . . . A fee shall be charged in accordance with the provisions of section 35-C112 of the City Code of San Antonio, Texas.  The city manager shall have authority to issue permits solely for privately controlled spaces, including real property owned by the City of San Antonio and leased to a private individual or business, or real property owned by a private individual or business.  The director of downtown operations shall have authority to immediately suspend, subject to an appeal process to the city manager or the city manager's designee, any such permits in event that the permitee does not comply with the adopted policies and procedures or is in violation of this chapter.

23

(b)  *Public Property Vending Permits*.  Six (6) public property vending permits, one for each designated public property vending location, shall be issued annually by the designated city department in accordance with policies and procedures adopted by the city manager or the city manager's designee.  The public property vending permits shall be subject to the authority of the city manager or the city manager's designee to designate special events including crafts shows and parades which shall take precedence over the rights issued in the Permits and during which vendors operating under a public property vending permit shall not be allowed to operate.  The city manager or the city manager's designee will identify the six (6) Public Property Vending Locations according to the following criteria: (I) each site shall be sixty (60) square feet; (ii) each site shall in an area of public property on the Riverwalk to allow for a minimum of eight (8) feet of Riverwalk area right of way (sidewalk/pathway) adjacent to the site;(iii) each site shall be a minimum of fifteen (15) feet from any leased patio space, any public seating, such as a park bench, and any barge loading station.  Each site shall be securely marked by any means deemed appropriate.  A fee for the public property vending permit shall be charged in accordance with the provisions of section 35-C112 of the City Code of San Antonio, Texas.[59]

**D.**    **Application of Preliminary Injunction Standards**

**1.**    **Irreparable Harm**

The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[60]  Thus, the Court assumes without discussion for the purpose of this report that plaintiffs have demonstrated irreparable harm has occurred and is continuing to occur.  Nevertheless, even assuming irreparable harm, as discussed below plaintiffs have failed to meet their burden to establish the likelihood of success on the merits of their claim, an essential pre-requisite to the issuance of

---

[59] San Antonio, Tex., Unified Dev. Code, art. VI, div. 6, § 35-679(e) (Jan. 1, 2006), available at www.municode.com.

[60] Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976).

preliminary injunctive relief.

>        **2.        Likelihood of Success on the Merits**

The Riverwalk is a pedestrian walkway and public park along the San Antonio River, comprised of more than fifteen acres in downtown San Antonio, Texas.[61]  The Riverwalk has been "set aside as a commons, or open space, to be used jointly by all residents of the [C]ity for the conduct of commerce, recreation, and social interaction."[62]  In addition, the Riverwalk was "consciously designed" and is promoted as a tourist destination, "bordered by hotels, restaurants, shops, bars, and other attractions, and is a frequent site of conventions."[63]  The City Convention and Visitors' Bureau promotes the Riverwalk as "the pride of the [C]ity," and the Riverwalk website claims it is "the #1 entertainment destination in Texas."[64]

"Plaintiffs are all individuals who sold souvenirs and novelty items to local visitors and tourists on the Riverwalk as their primary means of income."[65]  With exceptions, the City ordinances at issue, make it unlawful to "hawk, sell, or vend goods, merchandise, or services in the Riverwalk Area on public property, or on the public right-of-way, or on public property between the river and public right-of-way, or in the Riverwalk Area on private property that is within view from public property in the Riverwalk Area"[66] and to "peddle, canvass, or solicit or

---

[61]  Docket no. 6 at 2.

[62]  Id.

[63]  Id.

[64]  Id.

[65]  Id.

[66]  § 35-679(e)(2)(a).

cause or permit to be peddled, canvassed or solicited, any property or services or to hawk, sell, or vend goods, merchandise, or services in the downtown business district on public property."[67]

Plaintiffs assert, in sum, that they are likely to succeed on the merits of their challenge to the constitutionality of the ordinances because the laws: define vending broadly to include a wide range of First Amendment speech, including the commercial speech of advertising and solicitation; are categorical bans on commercial speech; are content-based and unrelated to any alleged commercial harm; ban all mobile vending on the Riverwalk; and ban all stationary vending as a primary business on public property on the Riverwalk or on private property within view of the Riverwalk.[68]  Based on these assertions, commercial speech, or "expression related solely to the economic interests of the speaker and its audience,"[69] is at issue.

To determine plaintiffs' likelihood of success in their attempt to have the ordinances declared unconstitutional requires the application of the four part test enunciated by the United States Supreme Court[70] in <u>Central Hudson Gas and Electric Corporation v. Public Service Commission of New York</u>.[71]  Pursuant to the test, the Court asks whether: (1) the commercial speech concerns lawful activity and is not misleading; (2) the government's asserted interest in restricting the speech is substantial; (3) the ordinances directly advance the asserted interest; and

---

[67]  § 16-236(b)(2)(a).

[68]  Docket no. 6 at 8-11,

[69]  <u>Central Hudson Gas & Elect. Corp. v. Public Serv. Comm'n of N.Y.</u>, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349 (1980).

[70]  <u>Speaks v. Kruse</u>, 445 F.3d 396, 401 (5th Cir. 2006); <u>see also</u> <u>South/Southwest Ass'n of Realtors, Inc. v. Village of Evergreen Park, Ill.</u> 109 F.Supp.2d 926, 927 (N.D. Ill. 2000).

[71]  447 U.S. at 566, 100 S.Ct. at 2352.

(4) the ordinances are more extensive than necessary to meet that interest.[72]  In other words, to be entitled to a preliminary injunction, for which plaintiffs bear the burden of proof, plaintiffs must demonstrate the banned speech was not deceptive or related to illegal activity and the City's interests in promulgating the ordinances were not substantial or the City is not likely to prove the ordinances advanced the City's interests or the City is not likely to prove the ordinances were not more extensive than necessary to serve the City's interests.[73]

At the first prong of the test, plaintiff must demonstrate the speech affected by the ordinances is lawful and not misleading.  Plaintiffs complain the ordinances preclude them from engaging in the commercial speech of vending souvenirs and novelty items along the Riverwalk and downtown business district.  Nothing in the record suggests plaintiffs' speech is "deceptive commercial speech [or] commercial speech related to illegal activity," which the City may lawfully ban,[74] and a fair reading of the ordinances indicates the laws regulate far more than deceptive or illegal commercial speech.  Thus, without evidence or argument to the contrary, the Court assumes for the purpose of this report that the speech at issue is not misleading or related to illegal activity and is lawful commercial speech.  Accordingly, plaintiffs have satisfied the first prong of the test.

With respect to the second prong of the test -- whether the City's interests are substantial – plaintiffs concede that in Ordinance No. 2006-11-02-1257, which amended § 16-236(b) and Ordinance No. 2006-11-01-1256, which amended § 35-679(e), the City's stated interests are

---

[72] Id.

[73] See Speaks, 445 F.3d at 400-02.

[74] Id. at 400.

"business development, traffic flow, and aesthetics."[75]  Additionally, the City asserts the "ordinances preserve the esthetics of the Riverwalk and downtown areas and for public interest of safety and nuisance abatement."[76]  Plaintiffs concede the City's "interests are legitimate,"[77] and there is no doubt the interests are substantial.  The Supreme Court has held that cities have a substantial interest in: protecting the aesthetic appearance of their communities by "avoiding visual clutter;"[78] providing safe and convenient circulation on public ways;[79] and preventing public nuisances.[80]  The City's interest in promoting tourism, a top industry in the City -- especially on the Riverwalk and in downtown areas, which include the Alamo, Spanish Governor's Mansion, and other historic buildings and sites – is a substantial public interest. Plaintiffs have not satisfied the second prong of the test by showing that the government's asserted interest in restricting the speech is was not substantial.

The third and fourth prongs are also problematic for plaintiffs.  At the third prong, plaintiffs must demonstrate the likelihood that the City will not be able to show the ordinances directly advance its substantial interests.  To that end, plaintiffs argue:

It is unlikely the government will be able to justify such a sweeping ban on

---

[75]  Docket no. 36 at 6 and n. 13.

[76]  Docket no. 26 at 2.

[77]  Docket no. 6 at 10.

[78]  See Members of the City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806-07, 104 S.Ct. 2118, 2129-30 (1984).

[79]  See Cox v. Louisiana, 379 U.S. 536, 554-55, 85 S.Ct. 453, 464 (1965)

[80]  See Kovacs v. Cooper, 336 U.S. 77, 86-87, 69 S.Ct. 448, 453-454 (1949) (plurality opinion) (sound trucks).

> commercial free speech without resorting to speculation and conjecture.  It is not
> at all clear how [the City's] stated goals of improved traffic flow, business
> development, and improved atmosphere will be advanced in a material way by
> these ordinances.[81]

Plaintiffs do not support these broad statements with citation to authority showing courts have

typically struck down similar ordinances because the laws did not advance the governmental

entity's similar substantial interests.  Nor have plaintiffs suggested evidence exists that would

show unfettered vending in the downtown business area, including on the Riverwalk, is not likely

to cause increased congestion on the City's public ways, a proliferation of unsightly vending

areas, reduced business development, or other unwelcome nuisances.  Plaintiffs cannot satisfy

their burden by merely relying on their unsupported speculation about the City's inability to

satisfy its burden at trial.  Accordingly, plaintiffs have not satisfied the third prong of the test.

　　At the fourth prong, the Court must consider the critical inquiry of whether the ordinances

are more extensive than necessary to further the City's interests.  "[I]f the governmental interest

could be served as well by a more limited restriction on commercial speech, the excessive

restrictions cannot survive."[82]  Plaintiffs contend "[i]t will be even more difficult to show how

this categorical ban on commercial speech is a 'reasonable fit' between the interests asserted and

the means chosen to achieve them."[83]  Plaintiffs suggest no alternatives to the City's chosen

method of protecting the aesthetics, safety, and business development on the Riverwalk and in

the downtown business area.  Nor do plaintiffs cite examples of other less restrictive ordinances

---

[81]  Docket no. 6 at 10.

[82]  Central Hudson, 447 U.S. at 564, 100 S.Ct. at 2350.

[83]  Docket no. 6 at 10.

or laws that the City could adopt in place of the ordinances at issue.  As with the third prong, plaintiffs' mere unsupported speculation about the City's inability to meet its ultimate burden on the merits is not sufficient to satisfy the fourth prong of the test for issuance of preliminary injunctive relief.

Plaintiffs also assert they are likely to succeed on the merits because the ordinances: provide no exception for good or services of a political, social, or religious nature;[84] are vague; are overbroad; provide no standards for issuance of permits, allowing for the arbitrary censoring of free speech by government officials; and constitute a prior restraint on fundamental speech rights.[85]  These arguments are, for the most part, conclusory statements regarding broad areas of First Amendment jurisdiction with no explanation as to how any cited authority might be on point with the language of the ordinances or the facts of the present case.  It is not clear from these broad statements whether plaintiffs are arguing it is unlawful for the City to ever require permits when goods and services of a religious, political, or social nature are at issue or whether the exceptions in the ordinances, which plaintiffs acknowledge, are not applicable to such goods and services.  Nor is it clear from the statements regarding standards for permits whether plaintiffs are arguing the City improperly delegated authority to the City Manager for adopting procedures; the procedures have not been adopted; the procedures have been adopted but expressly allow City employees to deny permits bases on the type of speech or goods at issue; or

---

[84]  Plaintiffs' argument that the ordinances make no exceptions for religious, political, and social goods and services, such as the distribution of religious and political literature and the solicitation of charitable donations, appears to contradict their assertion that the ordinances are content-based restrictions on commercial speech.

[85]  Docket no. 6 at 8-11.

plaintiffs each applied for but because of the adopted procedures were denied permits based of the type of goods or services at issue.  Plaintiffs' conclusory statements, unsupported by explanatory argument, are insufficient to suggest they have a likelihood of success on the merits of their claim to have the ordinances declared unconstitutional.

To the extent plaintiffs are seeking to enjoin all defendants from engaging in excessive force, making unlawful arrests, falsely imprisoning, tortiously interfering with existing or prospective relationships, assaulting, or slandering plaintiffs, the application does not address how plaintiffs have satisfied any of the preliminary injunction factors with respect to those claims.  Moreover, with respect to the claims against the Officers, the Court has issued a report recommending some of those claims be dismissed for failure to state a claim or because a particular Officer is entitled to summary judgment.  Accordingly, plaintiffs have failed to show the likelihood of success, or any other preliminary injunction factor, on their non-First Amendment claims.

> **3.      Balancing**

To satisfy the balancing factor, plaintiffs acknowledge the "legitimate" harms sought to be addressed by the City's ordinances are "undesirable changes in traffic flow, atmosphere, and commercial development in the Riverwalk area."[86]  Plaintiffs merely assert those harms "do not rise to the level of constitutional concern" and "the constitutional injuries to Plaintiffs clearly outweigh the injuries feared by Defendant."[87]  Without citation to authority or further explanation, plaintiffs have not shown that the alleged injuries to them, if a preliminary

---

[86]   Id. 6 at 8.

[87]   Id.

injunction does not issue, outweigh the harm to the City if the enforcement of the ordinances, in whole or in part, is suspended pending the disposition of this lawsuit.

### 4.    Public Interest

Plaintiffs have not shown the public interest would be served by enjoining enforcement of the ordinances.  Plaintiffs' assertion that "[a]ny public interest in traffic flow, business development, and atmosphere in the Downtown Business District cannot be so great as to justify governmental interference with the fundamental rights of citizens in a democracy," however laudatory, is an unsupported conclusory statement in the context of demonstrating that ordinances enacted through a democratic process be suspended by a court pending a full trial on the merits.

## VI.  RECOMMENDATION

Based on the foregoing analysis, it is recommended that plaintiffs' application for preliminary injunction[88]

> prohibiting Defendants (I) from enforcing §§ 16-236(b) [of the Code Ordinances of the City of San Antonio] and 35-679(e) [of the UDC] and Ordinance 98918 of the City of San Antonio, [collectively the "ordinances"] and (ii) from using excessive force, making unlawful arrests, falsely imprisoning, tortiously interfering with existing or prospective relations, assaulting, or slandering Plaintiffs[89]

be **DENIED** on the ground that plaintiffs have not demonstrated the likelihood of success on the merits or that a balance of the equities and the public interest are served by issuance of a preliminary injunction.  The appropriateness of injunctive relief, as the other relief sought by

---

[88]  Docket no. 6.

[89]  Id. at 1.

plaintiffs in their first amended complaint, should be decided at a trial on the merits.

## VII.  INSTRUCTIONS FOR SERVICE AND NOTICE
## OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation

on all parties by either: (1) electronic transmittal to all parties represented by an attorney

registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for

Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to

any party not represented by an attorney registered as a Filing User.  As provided in 28 U.S.C. §

636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with

the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the

Report and Recommendation within 10 days after being served with a copy, unless this time

period is modified by the District Court.

A party filing Objections must specifically identify those findings, conclusions or

recommendations to which objections are being made and the basis for such objections; the

District Court need not consider frivolous, conclusive or general objections.  A party's failure to

file timely written objections to the proposed findings, conclusions and recommendations

contained in this Report will bar the party from receiving a de novo determination by the District

Court.[90]  Additionally, a party's failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this Report will bar the aggrieved party, except

upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

---

[90]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

33

findings and legal conclusions accepted by the District Court.[91]

      **ORDERED, SIGNED** and **ENTERED** this 25th day of July, 2007.

                                      *Pamela A. Mathy*

                                    **PAMELA A. MATHY**
                                    **UNITED STATES MAGISTRATE JUDGE**

---

[91] Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).